Good morning, your honors, and I would like to reserve three for rebuttal if I could, sir, please. I'm George Wentz. It's a pleasure to meet you all this morning, and I'm honored. I'm with the Davalier Law Group. I'm honored to represent Mr. Henry Allen. Mr. Allen suffers from a diagnosed disability known as electromagnetic sensitivity. This disability makes him unable safely to be exposed to the electromagnetic field that is generated by the defendant's tower and array of antennas. So here's what we think the case comes down to. It's a 12B6. We think the judge below improperly applied the standard. We think he found facts. We think he invaded the province of the jury. We think that we didn't get counsel. I mean, there's a host of problems with this case, and I think number one is you don't have a physical presence. What is the physical presence that you're looking for or the nexus to the physical presence? Let's go with physical presence, your honor. We think this is right down the fairway in WIRE versus 20th Century Fox and all the cases that are cited there under. So if you recall the Verizon commercials, can you hear me now? Can you recall the service area that is generated by the tower and the array? You are in a physical public place, physically there in that place, much as if you were... Okay, so even if that were true, which I think the cases suggest that that's not accurate, the ADA cannot apply just because you're in a physical place. You have to be in a public accommodation. Correct. And how is that a public accommodation? It is a public accommodation because that is where the defendants who own the tower, own the arrays, and actually, your honor, own the spectrum. They buy it in an auction. That is the area that they cover for their service. That's where they provide their service. Unlike any of the cases cited, I cannot possibly put myself into an insurance policy. I can't put myself into an AT&T cable. I can't put myself into any of the cases, the Facebook, you know, website, right? I can't go in there. I cannot go in there, but in order to avail myself of their services, I must go in there. And so how is he prohibited from going in there? Oh, it's not that he's prohibited from going in there, sir. It's that because of the way that they make this radioactive field, this electromagnetic field, it's like a dome emanating from the towers, right? When he's in there, when he uses the service... He can use it, right? There's no restriction on him using it. When he uses it, it makes him sick. That's when he goes in the hospital. But that's not what the ADA is designed to cover. You've brought a tort claim under the auspices of an ADA claim. It doesn't make any sense. I think it does, your honor, and I know that was argued, but what the ADA... But if that's true, if that's true, then when you build a ramp to accommodate someone who might be disabled to come in, if they claim that they are somehow injured by using the ramp, that's not an ADA claim. They can still get in. They might have a tort claim, but they don't have an ADA claim. They have an ADA claim because this gentleman has an ADA claim for the reason that the ADA is to allow disabled people access to modern-day life, right? I was in a wheelchair. I couldn't go to a restaurant. I was in a wheelchair. I couldn't go in to, you know, eat. I couldn't go to a movie theater, right? What's happened as technology has advanced. Now, it is a physical place, but to access this... Well, if you take the defendant's brief and you look on page five, you will see that they refer there, on page two in their lower court brief, you'll see that they refer there to a significant gap. There's a gap. That's why they sued ADA County. They said, we can't provide our services to the public because there's a gap. That was the gap in coverage. They said it. It's just like, can you hear me now? If you can't hear me, then there's a physical gap. Mr. West, what are the boundaries of this RF field? Is he so sensitive that he can't be exposed to RF anywhere in North Idaho where there's cell service? No. If you look, your Honor... What's the radius of... Give me the danger zone here that you're insisting is the physical place. The specific physical place, in this case, is the gap that they sued over in Ada County. All areas in which there is not current cell phone service, but which is now covered with the erection of this tower? This particular tower. And the gap... So your position is that the physical presence exists anywhere that cell service coverage exists in North Idaho. My position in this particular case is that there was a gap that they sued Ada County over. Horizon sued Ada County. They said there's a significant gap in our service area. If I'm a restaurant, right, and I've got a kitchen, and I've got my... This is my restaurant dining room, right? That's my service area. I can't cover it. They went to court and they said there's a physical place we cannot provide our service. They sued Ada County. Ada County settled for the reasons that they bring up in preemption, right, because they settled because of that. So they then entered agreed facts in a consent order. It's in the record, both lower court and your court. And they talk about this gap. And we all know what a gap is. I mean, I've got one between my front teeth. I mean, it's a very physical... Actually, counsel, I have no idea what a gap is in this context. Well, the gap is the defined physical area which they agreed, and they say to this court in their briefing, where they could not provide their services. So what's the... I'm really struggling to understand the geographical scope, and what remedies are you asking the court to provide if his condition is exacerbated by exposure to RF radiation in the area that used to be a gap but is now covered by the tower? Are you saying there's an ADA violation anywhere in that geographical area that now is fully covered? I'm saying that you can't exclude access to people with a diagnosed disability. Now, the FCC allows... But the access that he's seeking is not to be physically present there, but to have cell coverage there, which you admit that he does have. So I'm sort of struggling with the same thing that Judge Nelson is struggling with. There's no there there. Well, he has cell coverage, right? Right. And what he can't access, because it makes him sick, to do so, the way that they are generating this field right now... What if he's 15 miles away from the tower? Does that aggravate his symptoms? That's a great fact question. We would have loved to have tried with the jury, and we would have shown the court our experts do. And what would your experts say to my question? Our experts would say, if we'd had a chance to try it, our experts would say that there is a range of services that can be provided, a range of radioelectric fields that can emanate from this tower, that they can change their policies, that they can modify their policies, and how they create that. If all they want to do is... They can actually provide all the same services, but they can modify their policies so that this gentleman doesn't end up in cardiac arrest when he uses the service. I don't understand why he wouldn't be susceptible to cardiac arrest in an area that previously had coverage before the tower was erected to cover this gap. It's this device. You're pointing to the phone? Yes, sir. This device emanates radioactive field. Right, but isn't there a limit to how dangerous it is? In other words, if I have the phone right next to my heart, and I know they're studying this, I don't think there's any definitive scientific answer yet, but there may be a concern that the radio, the RF frequency is somehow interfering with your heart, but if it's in the corner of the room, it's probably not hurting you at all. So that's why I'm struggling here with the geographical scope. So his particular disability is the way that they are generating this dome that covers the physical place that he must be in to use the service. Their service area. That's the physical place. But what is the effect? Okay, you say you want the court to issue an affirmative injunction telling the cellular telephone companies you've got to put in special antennas so that it only covers. I don't understand, if it covers this narrow area that's otherwise a gap, then why isn't he still susceptible? Why isn't there still an ADA violation because he's still susceptible to exposure to RF? Here's our ask. Send it back to the lower court and make the lower court give us the lights that we pled most favorable, the inferences they're from. Don't find the main fact, this is not a physical place. This is our complaint to you. But you still haven't answered my question as to what are the limits of the physical place. Is it the entire world that's covered by cellular coverage or is it just the gap area that this tower was erected to provide service? It is the way that they provide the service, which within the band of the FCC acceptable ranges, they have a number of ways that they can do it. But here's what happened here, Judge. And this is what. Does the FCC have a regulation that says you can't get within 15 feet of the tower? Restaurants don't have regulations that say that you can't build a barrier. It's the same kind of thing. What happened here, we came in, we alleged it's a physical place, we alleged everything, right? The judge said, no, it's not a physical place. That's a great fact. No, it's not a fact. It's a legal question. I mean, I could walk through the statute. You've read it, Title III. Stop me when I get to something that sounds like a cell phone gap that you're talking about. An inn, hotel, motel, a restaurant, bar, a motion picture house, an auditorium, a bakery, grocery store, a laundromat, a terminal, a museum, a park, zoo, a nursery, a daycare center, a gymnasium, anything in there that's remotely close to the physical place that you're talking about. Everything you mentioned in today's society is accessed through just what you said. Every single example. You don't answer his question. The problem is, and I guess I didn't ever say anything, but I've been thinking, I've got to find a place of public accommodation, and I've got to find that because that's in the statute, and they didn't define it, and so they laid a list. And so Judge, my honorable colleague, has finally laid the list down and said, how do you make this list with what you're saying and where you went today and how this argument's gone has been very confusing to me because you tried to make a list for the district court, but it didn't work. I wondered where the devil were we going to get this. You don't have it. You don't have the place of a public accommodation as defined by our circuit. Now, there's other circuits that define it wider. If you want to go over there, you might make it, but our circuit makes it very straight what the place of a public accommodation is. Look at the Torres case, Torres AT&T, right? It's a district court case, but it's nicely analyzed, and it's consistent with WIRE. It's nicely analyzed. If you want to say it is, I read the analysis. I'm not sure it's so good, but I'll go with you that far. So here's how they applied, and here's what they said is the limiting factor, right, which I think is probably what I'm saying as well, which is if you can go into the place of public accommodation physically, then that meets the test. We're saying the service area, their place where they accommodate the public, is what they call themselves the service area. You have to be in the service area to get the service, right? You must be. They called it a gap. I'm saying, yes, a gap must be a very physical place, so the physicality test. Now, what Torres says is the distinction is that if you cannot physically enter this place, then it doesn't meet the WIRE test. I agree. I cannot go into a cable. I can't fit. I can't go into an insurance policy, right? I can't fit. I can't go into a website. I physically can't do it. I can't become zeros and ones and become digital. I have to. Yeah, but the website, that's the closest you can come is the website cases, but the websites are tied to a physical accommodation. If you can't get on an order from a restaurant, which is in the statute, then you have a problem. So I think the website cases are good for us. Yeah, well, they're closer. No, no, no, because when they say the websites don't, right, it's not a physical place. The distinction here, your honors, is that in order for me to, my client, to avail himself of these services, all the cases they cite, it's physically impossible for him to enter the service area. A piece of paper in an insurance policy, a cable, and all those, you can't become, you cannot, you must, in order to avail himself of the services in this case, he must enter. It's a physical area, and when he's in it, he gets the services, and when he's outside of it, he doesn't get the services. You don't have to, Judge Smith, you don't have to change the law. The law here is good. The Ninth Circuit law is good. I like it for our case. Wire is good, right? So when I have, when I, do I meet the test of a physical place? Yes, it's a gap. They filled the gap. They sued to fill the gap. They define the physical space. They're, can you hear me now, Verizon, a defendant in this case, they define it. Mr. Wentz, would there be an ADA violation if he came near another cellular tower besides the one in Eagle that you're complaining about? Would there be an ADA violation if he happened to walk by one in Boise? The ADA, that's a very good question, Your Honor, and I think all of these things can be fleshed out at trial if it hadn't been thrown out. If it's a good question, answer it, because that's a very, that's exactly the point that I was making. We're not really in a public accommodation here. No, it really is a public accommodation because it is a place that you must enter to be served. If he went before, if he went with another cell tower, within that distance of another cell tower, would there be another violation? Answer the question. That's a pretty, that's a really good question. That's a really good question, Your Honor, and I knew when I heard you earlier I was in trouble. You guys are very well prepared. Thank you so much. Thank you. We'll give you a minute for rebuttal. We've taken you over. Thank you. I appreciate it, Your Honor. Good morning, and may it please the Court. Scott Elder for the appellees. Can you tell me what a gap is in this context? Because I'm more confused than I was when I started. I believe, as the appellant has used it here, that a gap is simply a location where you cannot get cell coverage with your provider of choice. So if AT&T does not provide coverage in a certain location or Verizon does not and you are a subscriber, that is your gap. I don't think it has any relevance under where a robust. It has nothing to do with the public. He's not, in fact, that's the place he can be, right? Or arguably. That's right. All right. Thank you. I'm not asking you to make his case for him. I'm trying to understand it. And your questions and Judge Tallman's questions illustrate perfectly why the decision below was correct. There is no place of public accommodation to which Mr. Allen seeks access in this case. He does not seek access. This case is not about access to a good, a service, or a location. Well, so let's look at the Internet cases, because those seem to be his most analogous cases. And tell me why, I mean, we do have cases that say when you don't allow someone to use the Internet, that can affect a public accommodation and be actionable under the ADA. Tell me why those cases would not be able to be extended here. Because those cases are about access. And one of your earlier questions was, doesn't Mr. Allen have access? Doesn't he have the same access that everyone else has? And the answer is yes. He admits here and he admitted below he has access. But I guess, given him the benefit of the doubt, if I understand it right, what he's technically saying is he can only exist or be physically present within a gap every time he leaves the gap and goes into cell phone coverage. I think, at least I thought before we came into argument this was his argument, that then he can't leave the gap. Every time he leaves the gap, his disability impacts him. Is that right? I hesitate because I'm not sure I tracked the question and what he said about the gap. I'm just trying to say, as I understand it, every time he goes into where he can get cell phone coverage, that affects his disability. And he's asking you, the client, to make it so that he can go there, use the cell phone service without getting sick. Maybe it is he can go there, he just can't use his cell phone. When he uses his cell phone, that's what gets him sick. Well, it's the difference between access and injury. And Title III of the ADA provides access. It does not prevent injury. And so this is straight out of WEAR. WEAR covers this example, and it uses the example of a bookstore. It says what Title III requires is to provide access to the bookstore. Once you are in the bookstore, Title III does not require a Braille book because that is a different good or service. That is requiring the business to change what it provides. Our service is cellular service. Mr. Allen has access. He has access wherever he can get coverage if he's not in a gap. What he wants is a service, our product, that is unique to him. And that is not what Title III provides because Title III is about access, and this case is not about access. It's really about trying to prevent that tower from operating.  Can you help us out? Because Judge Tallman tried to get at it, and I'm not sure we got a sense of what is he asking you to do. I mean, you've been in this case. Like, what would this – you have to switch some alignment in your cell tower? I believe that's their theory, and this is the problem. There are two problems here. One, it is absolutely boundaryless. And so to Judge Tallman's questions earlier, there are no boundaries here because as we stand in this courtroom, we are inside Verizon's coverage area. In Eagle, Colorado, we are there. In downtown Boise, we are there. In downtown Coeur d'Alene, we are there. And so in all of those places, not only would we have to adjust our product to meet Mr. Allen's needs, we would have to adjust it to meet everyone else's needs who had a purported disability under Title III and wanted us to change that service to accommodate them. So there are no boundaries. And that raises two issues. One, there's no physical place of public accommodation under wire or ropeless. Wire and ropeless in this case. The second thing is if for any reason the panel doesn't believe that wire and ropeless in this case, I would ask you to consider a ground that the district court below didn't reach, which is this discussion animates exactly why Congress gave the FCC exclusive jurisdiction to regulate radiofrequency emissions. Radiofrequency emissions by definition operate without regard to city lines, county lines, state lines. And so they have to be regulated nationally, and they are. And that is exactly what Congress specified, and it gave that exclusive power to the FCC, including specifically issues related to alleged health effects of radiofrequency emissions. And so for that additional reason, you simply can't use Title III of the ADA to regulate radiofrequency emissions, and that's the effort here. The appellant admitted below that what they would prefer is to have the tower shut off. That's their preferred outcome. And they can't achieve that directly because a nuisance suit or a tort suit is preempted, and that's exactly what this court found in Wolfe v. City of Millbrae. Even if you shut down the Eagle-Idaho Tower, he would still have under, as I understand his theory, although he wouldn't answer my question, there would still be an ADA violation if his client got too close to the Boise Tower. If he left his home. That's exactly right, and that is part of the problem. And the reason that it has to be regulated by the FCC on a national level and not by the ADA. So how soon are you going to launch a satellite so we don't have to use towers? That could be. That'll solve the problem, right? He still couldn't go to space, though. I'm not sure it could even solve the problem. A satellite would be just a bigger tower. But for all of those reasons, under Ware, under Robles, this case was properly dismissed, and we would ask you to affirm the district court. Okay. Thank you, counsel. We'll give you a minute for rebuttal. Oh, we're tag-teaming. We are. Scott McCullough for Appellant Henry Allen. Let me see if I can't clear through some of the outstanding questions. One, what is the remedy that Mr. Allen is requesting? It is limited to their policies, practices, and procedures with regard to that single cell tower that's right by his home. But why wouldn't he have the same problem if he got too close to a cell tower in Boise? Shutting down the Eagle Tower is not going to solve his problem, is it? Let me clear that up, too. We did say that we would prefer that they close that tower, but we also indicated there are other measures that can be taken with regard to their policies, practices, and procedures that would ameliorate, if not completely eliminate, the special conditions that appear to occur there. Mr. Allen is here. He can be out around RF exposure. And you're not asserting that as he sits in our courtroom today, the ADA is being violated? No. Okay. So I don't understand. But I don't understand the difference. I don't either. One of the things about the ADA, especially when you have an individual plaintiff, is you're dealing with individual circumstances. And there's something about the individual. You're actually not. That's the problem. The problem with this case is you've entirely misused the ADA. This is a tort claim couched as an ADA claim. Kudos. You get a 10 out of 10 for creativity. You get about a 1 out of 10 for viability. We're not seeking damages. We are seeking injunctive relief. We're asking for a reasonable modification of their policies, practices, and procedures on how they are operating that single tower there in Eagle, Idaho. There are certain things that they could do that would help Mr. Allen. Help me understand. Let's go back to the initial question. Sitting here today, it's not an ADA violation. Why is it an ADA violation when he's sitting in his home then? Because for some reason, when they set that tower up, it immediately began to make him sick. There was something particular about that tower. It could be fixed by maybe changing the angle or the orientation of the antennas. There's any number of things that could be done if they would just work with us. But remember where we ended up at the district court here. If that tower is unique among all other towers in the United States, they put the most unique tower in some way right next to his home. All that we know is as soon as that thing went up, he immediately began to get sick. But if he moved his house the same distance from the tower in Boise, you'd have the same problem under your theory of the case. Perhaps, perhaps not. We'd have to order the telephone company to modify that tower. The remedy we're seeking here is only as to that tower. Now, and remember. But you're asking us to write an opinion to declare that this is a violation of the ADA. So it may not be Mr. Allen. It may be Mr. Smith who. Actually, we're not. Oh, let's take Jones since we have him. Actually, we're not. We're asking this court to tell the district court that it erroneously entered an order of dismissal with prejudice based on what we believe was an inappropriate factual conclusion that these are not physical places. But if the district court was wrong in that regard to the Eagle Tower, it would be wrong in regard to the Boise Tower. I think it is true universally that the radio frequency field that's generated by any cellular tower is a physical place. I do agree with that. But that is a factual and technical, perhaps even requiring expert testimony, issue that should be resolved not at the 12B6 stage. And I think that's the disagreement that I have because this is a legal question about whether it's a statutory violation. Yeah. I mean, do you meet this? Have you alleged the statutory threshold? And is it a physical accommodation? We allege that it is a place of public accommodation and it is a physical place. Remember, what the court below ruled was it is not a physical place. Right. That was the sole basis of the dismissal. Frankly, the court ruled more than that, but that's okay. And we believe that that was just premature, that that was a disputed factual question. Now, is there a legal aspect to whether cellular companies are places of public accommodations? Yes, there are. But they do, once you have service, they do many of the same things that's in the laundry list in the statute that Your Honor just read out. They provide entertainment. You can order food. But he's not being restricted. That is the purpose of the service. But he's not being restricted from accessing it. And that gets me to the last point I was hoping you'd let me make. May I have just one more minute? Well, go ahead. We're feeling very generous today. Yes, you are, and I very much appreciate it. This isn't about access to the product. He does have access to the product. But remember, the ADA also speaks to equal enjoyment and erection of barriers. So you have to look at, from an ADA Title III perspective, access to the product, whether somebody is given unequal access or preferable access to the product or has erected a barrier to the product. Yes, it is true. There is cell phone service available around Mr. Allen's house. He could use it. But they have erected a barrier to it, and given his disability, purely on account of his disability, he is suffering unequal enjoyment of the benefits from it. Using it makes him sick. He could change the policies, practices, and procedures. He could use it. Thank you. Thank you to counsel. Thank you to all counsel for your arguments in the case. The case is now submitted.
judges: TALLMAN, SMITH, NELSON